985 F.2d 562
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Danny A. MURPHY, Defendant-Appellant.
 No. 90-6400.
 United States Court of Appeals, Sixth Circuit.
 Jan. 26, 1993.
 
 Before RYAN and BOGGS, Circuit Judges, and DOWD, District Judge.*
 On Rehearing
 RYAN, Circuit Judge.
 
 
 1
 Defendant Danny Alan Murphy appeals his conviction on charges of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count I), and use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count II). We are required to decide:
 
 
 2
 1. Whether the district court erred by failing to give a lesser included offense instruction of simple possession of marijuana; and
 
 
 3
 2. Whether the district court erred in denying Murphy's Fed.R.Civ.P. 29 motion for acquittal based on the insufficiency of the evidence on the firearm charge?
 
 
 4
 We answer both questions in the affirmative. The drug trafficking conviction (Count I) must be reversed because the district court erroneously failed to give a requested lesser included offense instruction. The conviction for use of the MAC 10 weapon during a drug trafficking offense (Count II) must be reversed because there is insufficient evidence to support it.
 
 
 5
 We shall affirm, however, the conviction for use of the Walther PPK pistol during a drug trafficking offense.[1]
 
 
 6
 Murphy has also raised a challenge to the admission of prior acts evidence under Fed.R.Evid. 404(b). While we reject this challenge to the court's judgment, we will address it briefly below.[2]
 
 
 7
 We originally decided this case in an opinion filed on December 19, 1991. The government moved for rehearing and we granted its motion and vacated our opinion and judgment on March 26, 1992. Now, after careful consideration of the supplemental briefs filed by the parties, we readopt our original opinion, virtually verbatim. However, we reverse our previous erroneous conclusion that the defendant's conviction for the 18 U.S.C. § 924(c) firearm conviction must necessarily be reversed since the drug trafficking conviction charged in Count I of the indictment is reversed. That conclusion was incorrect and is the basis for our order granting rehearing.
 
 I.
 
 8
 On March 23, 1990, acting on an informant's tip, agents of the Drug Enforcement Administration Regional Task Force and officers of the Kentucky State Police executed a search warrant of Murphy's house. Upon entering the house, the officers went to the freezer in the utility room where an informant, Mary Stokes, had told them that bags of marijuana would be found. The officers found four plastic bags containing approximately 1.5 pounds of marijuana, just as Stokes had described. The officers found thousands of marijuana seeds in the utility room and throughout the house. Subsequent testing at the DEA laboratory confirmed that 450 plants could be grown from the seeds found in the utility room but that the other seeds were not viable. In the room adjacent to the utility room, the officers found two or three boxes of plastic bags typically used to package marijuana for resale. The basement, where the officers found styrofoam cups, foil, high intensity lamps, and flower pots with marijuana, appeared to be a "grow house" for marijuana.
 
 
 9
 The search of the house also produced several weapons. In the living room, adjacent to the kitchen and utility room, the agents found a loaded Walther PPK pistol in a metal box. In Murphy's second floor bedroom, they found a loaded shotgun. In a closet in the attic crawl space, they discovered a .223 caliber rifle with a fully loaded clip inserted. On the floor next to the rifle, they found an aluminum case containing an Ingram MAC 10 automatic weapon, fully loaded ammunition clips, a silencer, black leather gloves, and a homemade radio frequency detector. In Murphy's truck, the officers found a .45 caliber pistol.
 
 
 10
 On April 18, 1990, a grand jury indicted Murphy on charges of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and two firearm offenses, later merged into one, in violation of 18 U.S.C. § 924(c)(1). A superseding indictment alleged the time frame of the drug offense as "[b]etween on or about December 1, 1989, and March 23, 1990."
 
 
 11
 The case was tried to a jury in August 1990. The government's case consisted of testimony of marijuana sales at Murphy's home outside the period charged in the indictment. Mary Stokes, a paid government informant, testified that she had known Murphy and his girlfriend, Gail Simmons, since 1979. Stokes testified that she went to Murphy's home once a week from approximately June 1986 through late 1987 to procure marijuana. Usually, Murphy would pack the marijuana in the kitchen and have Simmons bring it out to the purchaser. Stokes testified that Murphy required the purchaser to smoke with him to insure that the purchaser was not an undercover officer. During Stokes's visits, she observed six to seven large marijuana plants growing on the deck and was told that more was grown in the basement. She also observed that the freezer was packed with one pound baggies of marijuana, and that loaded guns were kept at the house. After a disagreement with Murphy in 1987, Stokes stopped visiting Murphy but continued to buy marijuana from Simmons. She did not return to Murphy's home until November 1989 when she observed approximately twelve bags of marijuana in the freezer.
 
 
 12
 Vicki Cooper testified that she smoked marijuana given to her by Simmons on a car trip with Murphy in October 1985. She did not remember whether Murphy smoked any marijuana on the trip. Two months later, she smoked marijuana at Murphy's home and was told by Simmons that "there's more of this where that came from." Cooper did not recall whether Murphy smoked any marijuana on this occasion either.
 
 
 13
 Vicki Cooper's husband, John Cooper, also testified for the prosecution. Cooper testified that he and his wife smoked marijuana at Murphy's home in February 1986. Cooper did not recall whether Murphy also smoked the marijuana but did recall that Murphy passed the marijuana to him. He also recalled that Simmons offered to sell them marijuana.
 
 
 14
 Barbara Riffe testified that beginning in 1987 and 1988 she went to Murphy's home to trade food for marijuana with Simmons. She testified that she never saw Murphy sell or give marijuana to anyone.
 
 
 15
 In presenting their case, the defense argued that Murphy possessed marijuana but not with the intent to distribute. Mary Stokes's former husband, Keith Hendricks, testified that he went with his wife to purchase marijuana and was told not to say anything to Murphy because the transaction was between Stokes and Simmons.
 
 
 16
 Gail Simmons testified that she grew the marijuana found in the house for her daughter who suffered from multiple sclerosis. She testified that Murphy smoked the marijuana and that she gave away and sold marijuana to Stokes. She denied that Murphy ever sold or gave away marijuana and stated that he disapproved of her doing so.
 
 
 17
 Michael Brown, a dealer in firearms, testified that Murphy bought the MAC 10 and silencer from him in 1970 as an "investment and collector's item" and that both were legally registered to Murphy.
 
 
 18
 At the conclusion of both the government's evidence and the entire case, the district court overruled defense motions for judgment of acquittal on both counts of the indictment. In discussing jury instructions, the district court also denied the defense's request for an instruction on the lesser included offense of possession of marijuana.
 
 
 19
 The jury convicted Murphy on both counts. The jury also found, pursuant to special interrogatories, that Murphy was guilty of using both the MAC 10 and the PPK handgun in connection with a drug offense.
 
 
 20
 Murphy then moved for a new trial and judgment of acquittal based on the court's refusal to give a lesser included offense instruction and on the insufficiency of the evidence. The court overruled the motion and sentenced Murphy to consecutive terms of six months on Count I and 360 months on Count II.
 
 II.
 A.
 Admission of Prior Acts Evidence
 
 21
 We shall first briefly address Murphy's challenge under Fed.R.Evid. 404(b) to the admission of evidence of prior bad acts--specifically, the testimony as to marijuana sales occurring prior to the time of the indictment. Rule 404(b) provides that
 
 
 22
 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 23
 The standard of review of a district court's admission of evidence under Rule 404(b) is for abuse of discretion. United States v. Acosta-Cazares, 878 F.2d 945, 948-51 (6th Cir.), cert. denied, 493 U.S. 899 (1989).
 
 
 24
 The government argued that Murphy's past acts of distribution during the 1985-1987 time frame were highly relevant to show Murphy's intent and knowledge with respect to the marijuana at issue during the indictment period. The court explicitly received the evidence only for that purpose. Under United States v. Rodriguez, 882 F.2d 1059, 1064-65 (6th Cir.1989), cert. denied, 110 S.Ct. 1144 (1990), evidence of prior acts of distribution may be admitted to show intent and knowledge with respect to later alleged distribution.
 
 
 25
 Under United States v. Terry, 729 F.2d 1063 (6th Cir.1984), in order for 404(b) evidence to be properly admissible, the prior acts must be both similar in nature and close in time to the acts for which the defendant is being prosecuted. Defendant challenged the evidence on the ground that the 1985-1987 time frame was too remote. We think the defendant's challenge fails. In United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985), this court made clear that there was no absolute maximum number of years for 404(b) purposes, and further held that distribution occurring two to four years prior to the acts charged in the indictment were reasonably near in time.
 
 
 26
 It is, accordingly, quite apparent that the district court did not abuse its discretion in allowing the challenged testimony into evidence.
 
 B.
 Lesser Included Offense Instruction
 
 27
 A lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit [the defendant] of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Such an instruction should not be given unless "the proof on the element or elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense...." United States v. King, 567 F.2d 785, 790 (8th Cir.1977), cert. denied, 435 U.S. 945 (1978).
 
 
 28
 Murphy requested an instruction for simple possession of marijuana, 21 U.S.C. § 844, a lesser included offense of possession with intent to distribute. United States v. Garcia-Duarte, 718 F.2d 42, 47 (2d Cir.1983); United States v. Burns, 624 F.2d 95, 104 (10th Cir.), cert. denied, 449 U.S. 954 (1980). The district court denied Murphy's request because if the jury "determine[d] that the United States had not prove[n] beyond a reasonable doubt any of the elements charged, then they [would] come back not guilty." This reason, however, is flawed. As the Supreme Court has explained:
 
 
 29
 True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction ... precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.
 
 
 30
 Keeble, 412 U.S. at 212-13 (emphasis in original). On the facts of this case, the district court erred in denying the lesser included offense instruction. Murphy admitted that he personally used marijuana that Simmons grew in Murphy's home. The amount of marijuana found at the time of the search, 1.5 pounds, is consistent with a defense of personal use. Murphy argued, moreover, that he did not possess the marijuana with the intent to distribute and there was no evidence at trial of distribution of marijuana by Murphy during the period charged in the indictment. Furthermore, Simmons and Hendricks testified that only Simmons distributed marijuana and that Murphy disapproved of her doing so. A rational jury, then, could have acquitted Murphy of possession with intent to distribute while convicting him of simple possession. As Keeble makes clear, the fact that Murphy might have been better off without the lesser included offense instruction is not a valid basis for denying a request for the instruction.
 
 C.
 Motion for Acquittal on Firearm Charge
 
 31
 Count II of the indictment charged Murphy with use of a MAC 10 automatic weapon and a Walther PPK pistol during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The MAC 10 was found in the attic crawl space near the upstairs bedroom and the Walther PPK pistol was found near the living room fireplace. Arguing that the government did not prove that these two weapons, which were not kept near the marijuana found in the utility room freezer, were used or carried "during and in relation to" a drug trafficking crime, Murphy moved for judgment of acquittal, pursuant to Fed.R.Crim.P. 29. The district court denied the motion. This court reviews the district court's denial of a Rule 29 motion by asking "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 18 U.S.C. § 924(c)(1) provides:
 
 32
 Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a ... machine gun, ... or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.
 
 
 33
 Mere possession of a firearm while engaging in criminal conduct is insufficient to convict under section 924. United States v. Brown, 915 F.2d 219, 224 (6th Cir.1990). The government must show some relation between the "use" of the firearm and the underlying drug trafficking crime. Id.; United States v. Feliz-Cordero, 859 F.2d 250, 254 (2d Cir.1988). Our circuit, however, has held that " 'uses' and 'carries' should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." Acosta-Cazares, 878 F.2d at 952.
 
 1.
 MAC 10
 
 34
 We disagree with the district court that the evidence was sufficient to convict Murphy for "using" or "carrying" the MAC 10 "during and in relation to" a drug trafficking crime. There was no evidence that the MAC 10 was ever removed from its locked case in the attic closet. Thus, it could not be argued that the MAC 10 was displayed to purchasers in order to intimidate them. See United States v. Stewart, 779 F.2d 538, 540 (9th Cir.1985), cert. denied, 484 U.S. 867 (1987). The MAC 10, located on the floor above the utility room, was not used to protect Murphy's marijuana stash. See United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989). Nor was the MAC 10 used under a drug fortress theory where defendants "have ready access to weapons with which they secure or enforce their transactions." Acosta-Cazares, 878 F.2d at 952. The "mere availability of a firearm nearby" will not suffice where the firearm is not readily accessible. United States v. Theodoropoulos, 866 F.2d 587, 597 (3d Cir.1989). Thus, the court in Theodoropoulos reversed a section 924 conviction based on the presence of four firearms on the defendant's porch. Likewise, in Feliz-Cordero, 859 F.2d 250, the court held that the presence of a firearm in a dresser drawer was insufficient to convict under section 924:
 
 
 35
 [T]here is no basis to conclude that the gun would have been quickly accessible if needed. Rather, under the circumstances of this case, the intent to use the firearm must be presumed from the fact that a loaded gun was found in the same room as drug paraphernalia during the course of a search pursuant to a warrant. This is not sufficient evidence to sustain a conviction, even in light of our recognition of the frequent connection between firearms and narcotics trafficking.
 
 
 36
 Id. at 254. The present case is even weaker, as the MAC 10 was not located near the drugs. Stored in a locked case in the attic crawl space, the MAC 10 was not accessible to protect the marijuana stored in the first floor freezer nor to intimidate purchasers in the first floor living room. Thus, the government failed to show that possession of the MAC 10 was " 'an integral part of the predicate offense and facilitate[d] the commission of that offense.' " United States v. Alvarado, 882 F.2d 645, 653 (2d Cir.1989) (quoting United States v. Meggett, 875 F.2d 24, 29 (2d Cir.), cert. denied, 493 U.S. 858 (1989)), cert. denied, 493 U.S. 1071 (1990). In Theodoropoulos, Feliz-Cordero, and the present case, the government, by establishing nothing more than mere possession of a firearm during a drug trafficking offense, failed to meet its burden. In drafting section 924, "Congress required either use or carrying of a firearm. Had it intended the provision to encompass possession of a firearm during a drug trafficking offense it would have so provided." Theodoropoulos, 866 F.2d at 597-98. The evidence, then, was insufficient to convict on the section 924 charge with respect to the MAC 10 weapon; consequently, Murphy may not, in the event of retrial, be made to "run the gauntlet" with respect to that charge again.
 
 2.
 Walther PPK Pistol
 
 37
 We agree with the district court that a reasonable jury could have concluded that Murphy "used" the Walther PPK pistol in relation to a drug trafficking offense. The pistol, although not located in the same room as the marijuana, was located in the room where Stokes and the Coopers testified the marijuana was delivered to purchasers, and where purchasers smoked with Murphy in order to show that they were not undercover agents or informants. In order to convict under section 924(c), the government need not show that the gun was kept with the drugs; it is sufficient that the weapon is in the same area of the place where drug transactions occur and is thus accessible in an emergency. United States v. Lyman, 892 F.2d 751, 754 (8th Cir.1989), cert. denied, 111 S.Ct. 45 (1990). Murphy "used" the pistol then, within the meaning of section 924(c)(1), because he "had placed the weapon to have it available for ready use during the transaction." Meggett, 875 F.2d at 29.
 
 
 38
 It does not follow, as we erroneously held in our original opinion, that reversal of the drug trafficking conviction charged in Count I of the indictment necessarily requires reversal of the section 924(c) conviction for use of the Walther PPK weapon during a drug trafficking offense. The government correctly argues, on rehearing, that the drug trafficking offense charged in Count I and the weapons offense charged in Count II are separate and distinct offenses and conviction for the predicate drug trafficking offense is not necessary to support conviction for the firearms offense. It is required only that the government prove as an element of the section 924(c) offense that the Walther PPK pistol was used or carried "during and in relation to" the drug trafficking offense. Indeed, when a section 924(c) offense is alleged, it is not necessary that the predicate drug trafficking offense even be charged and, if it is, no conviction for that separate offense is necessary since the evidence to support the drug trafficking element of the firearms offense is evaluated separately. United States v. Laing, 889 F.2d 281 (D.C.Cir.1989), cert. denied, 494 U.S. 1008, and cert. denied, 494 U.S. 1069 (1990); United States v. Wilkins, 911 F.2d 337 (9th Cir.1990); United States v. Numoz-Fabala, 896 F.2d 908 (5th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 76 (1990).
 
 
 39
 Here the jury convicted Murphy of the predicate offense and, even if it had not, on the record before us it is clear that there is sufficient evidence to warrant a jury's conclusion to conclude beyond a reasonable doubt that the government proved the drug trafficking element of the section 924(c) offense with respect to the Walther PPK pistol.
 
 III.
 
 40
 For the foregoing reasons, we REVERSE the marijuana possession conviction in Count I and REMAND for a new trial. We REVERSE the conviction under Count II for use of the MAC 10 firearm during a drug trafficking offense for insufficient evidence, and we AFFIRM the Count II firearm conviction with respect to the Walther PPK pistol.
 
 
 41
 The sentence imposed by the district court is VACATED and the case is REMANDED for resentencing on the Walther section 924(c)91) charge.
 
 
 42
 DOWD, Concurring in Part and Dissenting in Part.
 
 
 43
 I concur in the affirming of Murphy's conviction of count 2 as it relates to the Walther PPK pistol and the reversal of Murphy's conviction of count 2 as it relates to the MAC 10 weapon. I dissent from the reversal of Murphy's conviction for possession with intent to distribute marijuana.
 
 
 44
 In my view, the district court properly denied the defendant's request for an instruction on the lesser offense of possession of marijuana. The defendant did not testify nor did he offer any testimony that the 1.5 pounds of marijuana was for his personal use. To the contrary, he offered the testimony of Gail Simmons who indicated that at an earlier time, 1986-1988, she had lived with the defendant at Murphy's house. Simmons testified that during that period, she had begun to grow marijuana at Murphy's house so that her daughter would have a source for marijuana. Simmons indicated that Murphy preferred that she grow the marijuana in the house rather than go into town for the purpose of securing marijuana from other sources. Simmons then moved out of the house, but continued to visit on weekends and inferentially, to tend to the growing marijuana plants. Only the defendant, not Simmons, had any possessory interest in the house. Viewing the defendant's case in a light most favorable to the defendant, it was demonstrated that the defendant allowed another person to use his home for the purpose of growing marijuana for the use of a third person, i.e. the daughter of Simmons.
 
 
 45
 In sum, that evidence demonstrated that the defendant allowed a person with no possessory interest in his property to grow marijuana for distribution to another person. The defendant has possession of the marijuana by virtue of knowingly permitting it to be grown in his house and he knew that its destination was another person, i.e. minimally Simmons and her daughter.
 
 
 46
 The statute, 21 U.S.C. § 841(a), makes illegal the possession of marijuana with the intent to distribute. The term "distribute" "means to deliver (other than by administering or dispensing) a controlled substance or listed chemical." 21 U.S.C. § 802(11). The statute defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Cases involving distribution under this statute have upheld convictions for possession with the intent to distribute where the defendants aided and abetted the distribution of a controlled substance. U.S. v. Catchings, 922 F.2d 777 (11th Cir.1991); U.S. v. Lechuga, 888 F.2d 1472 (5th Cir.1989); U.S. v. Brunty, 701 F.2d 1375 (11th Cir.), cert. denied, 464 U.S. 848 (1983). Under the circumstances as presented by the defendant, it would have been error to instruct the jury on the lesser offense of possession. Accordingly, I respectfully dissent to the reversal of the defendant's conviction of Count I.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Judges Ryan and Boggs agree that the drug conviction (Count I) must be reversed. Judge Dowd dissents. Judges Ryan and Dowd agree that the evidence is insufficient to support the conviction for the use of a firearm as respects the MAC 10 weapon only (Count II). Judge Boggs dissents. All agree that the evidence is sufficient to support conviction for the use of the Walther PPK pistol
 
 
 [2]
 Murphy also challenges the court's refusal to grant a mistrial based on a juror's reading of a newspaper during the trial; its refusal to issue an order for the jury to view his home; and its denial of a motion for a new trial based on the cumulative effect of the alleged errors. Because we conclude that these assignments of error lack merit, we decline to reverse the district court's judgment on any of these bases