*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

    *v.*

No. 03-6239

MATTHEW J. JONES,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 02-00052—R. Allan Edgar, Chief District Judge.

Argued: March 11, 2005

Decided and Filed: April 15, 2005

Before: MARTIN and GILMAN, Circuit Judges; COHN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Leslie A. Cory, LESLIE A. CORY, ATTORNEY AT LAW, Chattanooga, Tennessee, for Appellant. Gregg L. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** Leslie A. Cory, LESLIE A. CORY, ATTORNEY AT LAW, Chattanooga, Tennessee, for Appellant. Christopher D. Poole, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

    RONALD LEE GILMAN, Circuit Judge. Defendant Matthew J. Jones was charged with one count of conspiracy to manufacture methamphetamine and one count of possessing equipment that could be used in its manufacture. Jones was tried by a jury, which convicted him on both counts. The district court then imposed concurrent sentences, the longest of which was 262 months of imprisonment. Jones now appeals his conviction and sentence. For the reasons set forth below, we **AFFIRM** the defendant's conviction, but **REMAND** the case for resentencing in accordance with *United States v. Booker*, 125 S. Ct. 738 (2005).

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

### A.     Factual background

In response to an emergency call about suspected drug manufacturing made by a concerned neighbor of Stanley Bradley in March of 2002, Deputy Kevin Murphy, an officer with the Warren County Sheriff's Department, stopped by Bradley's house to investigate. When he approached the front door and knocked, Deputy Murphy detected a smell that he associated with the production of methamphetamine. He also noticed that Stuart Whitman, an off-duty police officer who lived in the neighborhood, was in his yard trying out a new line on his fishing rod. Deputy Murphy called Officer Whitman over and asked him to keep an eye on the back of Bradley's house to see if anyone tried to exit surreptitiously. The officers monitored the situation for approximately 10 minutes, after which Officer Whitman saw Jones exit through the rear garage door. Officer Whitman called to Deputy Murphy, who went around the back of the house and immediately yelled at Jones to stop and put his hands up.

When Jones held up his hands, Deputy Murphy noticed that they were stained with iodine. This, in Deputy Murphy's opinion, was a sign that Jones had recently been involved in the manufacture of methamphetamine. Deputy Murphy handcuffed Jones and frisked him for weapons. None were found. The men then walked around to the front of the house, whereupon Jones consented to a more thorough search of his person. This search revealed that Jones had several coffee filters in his pants pockets. His suspicions heightened, Deputy Murphy entered the house with Bradley's consent and found numerous items associated with the manufacture of methamphetamine, including 182.5 grams of ephedrine and a jar containing iodine crystals.

### B.     Procedural background

Jones was subsequently charged with conspiring to manufacture methamphetamine (Count One), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and with possessing equipment that could be used in the manufacture of methamphetamine (Count Three), in violation of 21 U.S.C. §§ 843(a)(6) and 843(d)(2). At trial, the government called Cecil Swoveland as a witness. Swoveland, a longtime acquaintance of Jones, testified that Jones had taught him to how to make methamphetamine in 1999, and that he had seen Jones manufacture methamphetamine several times.

Jones was subsequently found guilty by the jury on both counts. The government, prior to the jury's verdict, had filed a notice of intent to use a state-court conviction of Jones's in order to enhance his punishment pursuant to 21 U.S.C. § 851. Jones responded by contending that this prior conviction was invalid because it was the result of an involuntary guilty plea. The district court rejected Jones's claim and, in reliance on the United States Sentencing Guidelines, sentenced Jones to 262 months of imprisonment on Count One and to 240 months of imprisonment on Count Three, to run concurrently. This timely appeal followed.

## II. ANALYSIS

### A.     Cecil Swoveland's testimony

Jones first argues that the district court improperly admitted the testimony of Swoveland, Jones's longtime acquaintance. He contends that Swoveland's testimony dealt with events that are too old to be of probative value in the present case. Evidentiary rulings such as this "are subject to the abuse of discretion standard of review." *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002). In general, a "court will find an abuse of discretion where it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000) (citation and quotation marks omitted).

The government called Swoveland to testify pursuant to Rule 404(b) of the Federal Rules of Evidence.  Under this rule,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).  The government argues that admission under Rule 404(b) was appropriate because Swoveland testified that Jones had taught him how to manufacture methamphetamine in 1999.  It therefore contends that the testimony is probative in determining Jones's intent on the day he was arrested by Deputy Murphy.

Jones, by contrast, argues that the activities described in Swoveland's testimony are too old to be probative.  Although Jones is correct in noting that "prior conduct must be reasonably near in time under the facts of the particular case," *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985), this court has previously concluded that there is "no absolute maximum number of years that may separate a prior act and the offense charged." *Id.*  Cases from this and other circuits have in fact affirmed the use of testimony relating to prior acts dating back much further than three years.  In *Ismail*, for example, the court admitted into evidence testimony relating to events that had happened up to four years earlier. *Id.*; *see also United States v. Murphy*, No. 90-6400, 1993 WL 15102, at **3-4 (6th Cir. Jan. 26, 1993) (unpublished) (concluding that evidence of prior acts dating back three to four years was admissible under Rule 404(b)); *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1075 (5th Cir. 1982) (concluding that evidence of prior acts dating back 10 years was admissible under Rule 404(b)); *United States v. Foley*, 683 F.2d 273, 278 (8th Cir. 1982) (concluding that evidence of an 11-year-old conviction was admissible under Rule 404(b)).  We therefore find no abuse of discretion in the admission of Swoveland's testimony.

## B.     The jury instructions

Jones next contends that his conviction should be reversed because the district court failed to charge a lesser-included offense in the jury instructions.  In particular, he claims that the elements of the charge of conspiracy to possess equipment and chemicals used to manufacture methamphetamine, 21 U.S.C. § 843(a)(6), are a subset of the elements of Count One, the charge of conspiracy to manufacture methamphetamine, 21 U.S.C. § 841(a)(1), and that the jury should have been instructed on the former as well as the latter.

As an initial matter, the parties disagree as to the appropriate standard of review to be applied regarding this issue.  They both agree that, where a proper request is made in the district court, this court will review the denial of that request under the abuse-of-discretion standard. *United States v. Ursery*, 109 F.3d 1129, 1136 (6th Cir. 1997).  But where a "defendant neither requested nor submitted a lesser-included-offense instruction, and did not object to the instructions given by the trial judge, the jury instructions are reviewable only for plain error." *United States v. Donathan*, 65 F.3d 537, 540 (6th Cir. 1995).

The government contends that Jones never made a request for an instruction on a lesser-included offense.  But the record reflects that Jones did make a written request for the district court to instruct the jury "relative to all possible lesser offenses contained in Count One."  In addition, Jones made an oral request at trial that the jury instructions include a charge of conspiracy to possess equipment used in the manufacture of methamphetamine.  Because Jones made a specific request for a lesser-included offense, we will review the district court's decision to deny this request under the abuse-of-discretion standard.  A court applying this standard "will find an abuse of discretion where it has a definite and firm conviction that the court below committed a clear error of judgment

in the conclusion it reached upon a weighing of the relevant factors." *Huey*, 230 F.3d at 228 (citation and quotation marks omitted).

A defendant is entitled to an instruction on a lesser-included offense if: "(1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *United States v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001).

In determining whether "there is an identity of elements of a lesser and greater offense . . . , courts are to compare the statutory elements of the offenses in question." *Id.* at 375. A defendant is guilty of conspiring to manufacture methamphetamine if, pursuant to 21 U.S.C. § 841(a)(1) (and 21 U.S.C. § 846), he conspires to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The same defendant would also be guilty of conspiring to possess equipment and chemicals used to manufacture methamphetamine if, pursuant to 21 U.S.C. § 843(a)(6) (and 21 U.S.C. § 846), he conspires "to possess any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance."

Jones argues that the latter offense is a subset of the former because some equipment is always necessary for the manufacture of methamphetamine. But, even if this is true, there is no evidence in the record to suggest that "the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser." *Colon*, 268 F.3d at 373. If Jones had been charged with conspiring to possess equipment and chemicals used to manufacture methamphetamine, 21 U.S.C. § 843(a)(6), the evidence presented against him would have been the same: He was found leaving a residence full of methamphetamine-making equipment with his hands stained with iodine, incriminating coffee filters were found in his pants pockets, and other testimony established that he had manufactured methamphetamine in the past. Nothing in the record suggests that the jury would have been likely to acquit him on the charge of conspiring to manufacture, yet convict him on a charge of conspiring to possess. Indeed, the fact that his hands were stained with iodine provides compelling proof of the government's allegation that Jones was physically involved with the making of methamphetamine, and did not simply possess the necessary equipment. Accordingly, Jones has failed to satisfy the fourth *Colon* factor.

Because not all the *Colon* factors were met, there was no abuse of discretion. The district court therefore properly omitted a charge of conspiring to possess equipment used to manufacture methamphetamine in the jury instructions.

## C.      Reliance on the prior conviction

Jones next contends that the district court improperly relied on a prior state-court conviction in enhancing his sentence pursuant to 21 U.S.C. § 851. He argues that this prior conviction was the result of an involuntary guilty plea and therefore should not have been used to enhance his sentence. *See* 21 U.S.C. § 851(c)(2) (allowing defendants to claim that an alleged conviction is invalid). Although "the district court's conclusion that a plea is voluntary is to some degree a factual finding, . . . the ultimate question whether a plea was voluntary requires a legal conclusion." *United States v. Walker*, 160 F.3d 1078, 1095-96 (6th Cir. 1998). We therefore review this issue de novo. *Id.*

The criminal offense in question was an October 2001 conviction in state court on one count of selling a controlled substance. Jones's guilty plea required him to serve a total of three years, 164 days of which were to be in detention and the remainder of which were to be served on probation. Because Jones had already served 165 days in pretrial detention, the plea agreement enabled him to be released from custody immediately. The colloquy between the trial judge and Jones proceeded as follows:

| | |
|---|---|
| The Court: | Is your plea freely and voluntarily based? |
| Jones: | Yes, sir. |
| The Court: | Do you understand the name and nature and elements of the crime that you are charged with? |
| Jones: | Yes, sir. |
| The Court: | [Counsel], did you advise your client [of] the nature of the crime with which he is charged and any defenses he might have? |
| Counsel: | Yes, Judge, we have discussed this on a couple of occasions. |
| The Court: | Jones, do you confirm that? |
| Jones: | Yes sir. |
| The Court: | Do you understand that these rights are still yours? You have the right to a Jury trial. You have the right to face your accusers. You have the right to a lawyer. You have the right to refuse to testify and the Jury will be instructed that that cannot be held against you. If you plead guilty now, you are asking me to let you give up these rights and you are asking me to place sentence upon you. Do you understand that? |
| Jones: | Yes sir. |

Several more questions followed, after which the trial judge asked whether Jones had "any complaints" about his lawyer. This question was answered in the negative, and the sentence was pronounced.

Jones now contends that the above sequence of events violated his constitutional rights. He argues that (1) the trial judge failed to adequately inform him of his rights, (2) his low IQ (which hovers around the 19th percentile) required a more thorough explanation of what he was waiving, and (3) the fact that he would be released from custody immediately made the plea bargain offer "by its very nature coercive." All of these factors, he contends, serve to make his prior conviction constitutionally invalid.

These arguments are unpersuasive in light of this court's ruling in *Walker*. In that case, the defendant similarly contested his enhanced sentence on the ground that his prior conviction was constitutionally defective. He pointed to his colloquy with the trial judge, which revealed a one-sided conversation punctuated with Walker occasionally stating, "Yes, your honor." In rejecting his claims, however, this court concluded that "[t]here is no requirement that in order to rely on a defendant's answers in a guilty-plea colloquy[,] to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to its consequences." 160 F.3d at 1096.

Jones attempts to distinguish *Walker* by arguing that, while Walker was a "bright young man," Jones is intellectually infirm, with an extremely low IQ. Moreover, Jones claims that Walker was able to sign the plea agreement during the plea hearing itself, and that the more detailed series of questions asked by the trial judge enabled Walker to understand "what he was doing." None of these arguments, however, counter *Walker*'s key observation that "a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant to [the plea agreement's] consequences." *Id.*

In addition, the state trial judge made repeated efforts to determine whether Jones understood the import of the rights that he was waiving. After each statement, Jones was asked whether he understood what his rights were. His lawyer was also asked if he had gone over the essential elements of the plea bargain with Jones. There is no reason to believe that Jones did not fully understand the consequences of his guilty plea. In light of these extensive safeguards, we conclude that the 2001 conviction was not constitutionally invalid. The district court therefore did not err in relying on the conviction in enhancing Jones's sentence pursuant to 21 U.S.C. § 851.

## D.    *Booker* issues

Finally, Jones argues that his sentence should be remanded in light of *United States v. Booker*, 125 S.Ct. 738 (2005). Jones, however, did not object to the court's reliance on the Sentencing Guidelines themselves. Nor did Jones raise a Sixth Amendment objection to the use of the Guidelines. We therefore review the district court's reliance on the Sentencing Guidelines under the plain-error standard. *United States v. Oliver*, 397 F.3d 369, 375 (6th Cir. 2005); Fed. R. Crim. P. 52(b).

Under the plain-error standard, there must exist "(1) error, (2) that is plain, and (3) that affect[s] substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (citation and quotation marks omitted) (alternations in original). The government concedes that there was plain error in the district court's understanding that the Sentencing Guidelines are "mandatory." Nonetheless, it contends that this error did not affect Jones's substantial rights, and that a remand is unnecessary.

We are not persuaded. Under *Booker*, the district judge is no longer bound by the Sentencing Guidelines. But the district judge at the sentencing hearing indicated that he felt obligated to sentence Jones according to the Sentencing Guidelines, his own judgment notwithstanding. Whether he would have imposed a different sentence knowing that the Guidelines are now advisory is a question that only the district court itself can answer. *See Oliver*, 397 F.3d at 380 n.3 ("We would be usurping the discretionary power granted to the district courts by *Booker* if we were to assume that the district court would have given [the defendant] the same sentence post-*Booker*."). In addition, the district court sentenced Jones on the basis of the amount of ephedrine found at Bradley's house, which was a finding of fact not made by the jury. We will therefore remand the case to the district court for resentencing in compliance with *Booker*.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the defendant's conviction, but **REMAND** the case for resentencing in accordance with *Booker*.