NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0520n.06

Case No. 22-3277

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 15, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| HOLDEN N. GALLAGHER, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

Before: SUHRHEINRICH, CLAY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This case arises from Defendant-Appellant Holden Gallagher's transfer of child-pornography files to an undercover government employee or online covert officer ("OCE") using a Peer-to-Peer ("P2P") file-sharing program. The government used these files to obtain a warrant, search Gallagher's computer, and subsequently indict him. His guilty plea and sentencing followed. Gallagher now appeals the district court's denial of two motions: a motion to suppress and a motion to withdraw his guilty plea. For the reasons stated below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A P2P file sharing network generally allows users to quickly share and receive multiple files. It connects users' computers through the internet and uses the unique Internet Protocol ("IP") address assigned to each computer to assist the file transfers. On April 26, 2015, someone with the username "Holden" sent a child-pornography file to an OCE on a computer through eDonkey, a P2P file-sharing network. The computer's IP address was 134.228.155.163. "Holden" sent two

more child-pornography images to the OCE the following day using the same computer as the one identified by the IP address.  The Federal Bureau of Investigation ("FBI") subsequently determined that the IP address identified above was assigned to Gallagher's stepfather at his and Gallagher's mother's residential address.  The United States Postal Inspection Service verified that Gallagher received mail at the same address.

On July 23, 2015, about three months later, a task force officer from the FBI set forth the aforementioned facts in an affidavit and applied for a warrant to search Gallagher's parents' residence and any electronics inside.  As is customary, an Assistant United States Attorney reviewed and approved the final draft of the affidavit before the officer submitted it to the court. The affidavit stated that Gallagher had a 2011 conviction in state court for "Gross Sexual Imposition" concerning a two-year-old boy and is registered as a Tier II sex offender.[1]  It also detailed the affiant's knowledge and experience with crimes involving technology, including child pornography.  The affiant explained how child pornography has become more accessible through the use of software such as P2P, and how agents use technology to search computer systems for files.  Finally, the affidavit described the characteristics of child-pornography "collectors."  It explained that collectors not only discreetly maintain personal collections of these files while only rarely, if ever, disposing of them, but also that these individuals also often seek out like-minded people with whom to exchange the files.  Based on the affidavit, the district court granted the search warrant on the same day.

The government executed the search warrant shortly afterward.  Gallagher declined to provide a statement during the search.  Nonetheless, the officers discovered that he was on

---

[1] The presentence report reveals that this conviction resulted from Gallagher sexually assaulting the child while the child and his mom were visiting another resident in Gallagher's home.  Gallagher violated the terms of his probation stemming from this conviction by improperly accessing the internet. (*Id.*).

probation for his prior state conviction. They also seized a Dell computer, on which they later discovered child-pornography files containing 155 images. Thirty-two of the images depicted Gallagher's relative's 13-year-old grandson who sent the images to Gallagher via Skype after Gallagher paid the child in the form of Visa gift cards.

On August 22, 2018, a grand jury indicted Gallagher in the Northern District of Ohio, charging him with three counts of child-pornography-related offenses under 18 U.S.C. §§ 2251, 2252. Gallagher initially pleaded not guilty and moved to suppress the evidence that the government obtained through execution of the search warrant. He requested a hearing, but the court denied his motion on the briefs.

On June 16, 2021, Gallagher changed his plea to guilty, but reserved the right in his plea agreement to appeal the suppression issue. In the plea agreement, the parties also recommended that the court impose a sentence within the advisory sentencing guidelines pursuant to Rule 11(c)(1)(B). The court engaged Gallagher in a colloquy during the change-of-plea hearing, confirming several imperatives including but not limited to: (1) that Gallagher understood his right to persist in his initial not-guilty plea and that he was entitled to counsel regardless of how he pleaded; (2) that Gallagher was not pleading guilty as a result of threats of any kind; and (3) that Gallagher was pleading guilty because he was in fact guilty of the charged offenses. The court asked Gallagher several times throughout the hearing whether he understood the questions the court posed, and Gallagher answered in the affirmative each time. Following the colloquy, the district court accepted Gallagher's guilty plea during the hearing and deferred acceptance of the plea agreement. In particular, the district judge stated:

> There will be a finding of -- the plea of guilty will be accepted as to each and every one of the charges. Upon my review sometime later today of the plea agreement, that finding will be entered and judgment will be entered accordingly, and the matter will be now set for or scheduled for sentencing.

About three months later, on September 15, 2021, Gallagher's attorney Neil McElroy withdrew from this matter and another attorney substituted in. Gallagher moved to withdraw his guilty plea on October 8, 2021, about three weeks later, which the court ultimately denied. The court accepted the plea agreement. Probation filed a final presentence report which indicated, among other things, that Gallagher provided a verbal statement in which he admitted to requesting the images from his relative's grandson and receiving and possessing the images through an electronic device. Gallagher did not object to this portion of the presentence report. The court later sentenced him.

Gallagher now appeals the district court's denial of both his motion to suppress and motion to withdraw his guilty plea.

## II.  ANALYSIS

### A.  Motion to Suppress

We review the district court's factual findings regarding the denial of a motion to suppress for clear error and questions of law such as the reasonableness of a search, *de novo*. *United States v. Wagers*, 452 F.3d 534, 537 (6th Cir. 2006) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) and *United States v. Harris*, 255 F.3d 288, 291–92 (6th Cir. 2001)). Additionally, we must construe the evidence in the government's favor. *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998).

Gallagher argues that not only were the facts underlying the affidavit insufficient to provide a substantial basis for probable cause, but they also were stale. The government counters that the affidavit was sufficient, and even were it not, the warrant survives under the good faith exception. We agree that probable cause supported the search warrant.

### 1. Substantial Basis

The Fourth Amendment of the Constitution provides that "no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. Probable cause lies where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir.2009)) (internal quotation marks omitted). Because we afford great deference to a magistrate judge's probable-cause determination, we limit reversal to arbitrary decisions. *Id.* (citing *United States v. Terry*, 522 F.3d 645, 647–48 (6th Cir. 2008)). In other words, we may only reverse if the affidavit underlying the search warrant failed to set forth a "substantial basis" for probable cause. *Id.* (citing *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006)); *see also United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009) ("[S]o long as the magistrate had a substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.") (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir.2000) (en banc)) (internal quotation marks omitted).

For example, in *Frechette*, we affirmed the district court's finding of a substantial basis in a child-pornography case where the search-warrant affidavit outlined the following: the defendant purchased a one-month subscription to a child-pornography site using accounts connected to his residence; the defendant was a registered sex offender; the agent learned from his experience with child-pornography cases that consumers of such files usually save them on computers; and evidence of the files could remain on the computers even after deleted. 583 F.3d at 379–80. We reached the same conclusion in *United States v. Lewis*, where the search-warrant affidavit detailed a computer user's interactions with an OCE whom the computer user believed to be a woman with two minor daughters. 605 F.3d 395, 398, 401 (6th Cir. 2010). In that case, the computer user's

username and computer were registered to the defendant and his residence. *Id.* at 398. The computer user expressed that he was willing to pay to engage in sexual activities with the woman and her daughters and sent the OCE (posing as the woman) several child-pornography images via instant messaging. *Id.* The affidavit also set forth the affiant's experience with child-pornography cases and belief, formed from that experience, that persons interested in such files "rarely, if ever, dispose of their sexually explicit materials." *Id.*

Furthermore, while not dispositive, evidence of past crimes or convictions relating to child pornography can also aid a finding of probable cause. *See United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006) ("When, in our case, the Homeland Security agents uncovered evidence of Wagers's connection to the websites carrying child pornography, his prior conviction was relevant, though not dispositive."). Indeed, "a person of reasonable caution would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." *Id.* (quoting *United States v. Blanton*, 520 F.2d 907, 912 (6th Cir.1975)) (internal quotation marks omitted).

Turning to the facts of this case, we find that the district court properly upheld the magistrate judge's probable-cause determination. To support its finding, the district court pointed to the affidavit accompanying the warrant request. In his affidavit, FBI Special Agent Steven Mueller stated that someone with the username "Holden," which also happens to be Gallagher's first name, downloaded and sent files containing child-pornography images to the OCE on two separate days in April from a computer with an IP address registered to the address where Gallagher receives mail. The court also considered Mueller's training and experience in child-pornography cases, his description of how the evolution of computers has allowed for faster and easier downloading using P2P file sharing, the nature of the P2P site itself which suggests that

users intend to exchange rather than just transmit images, and the nature of electronic images which allows for easy, long-lasting, and voluminous storage. Our precedent leaves no doubt that this is enough.

The affidavit in this case mirrors the affidavits in *Frechette* and *Lewis* to a significant degree. Just as the files in those cases were linked to a computer that was registered to the defendant's name and/or address, the files in this case were linked to a computer in the residence where Gallagher receives mail. However, "Holden" went a step further than the computer user in *Frechette* because he not only accessed the files, but also shared them with an OCE. 583 F.3d at 380. And like the defendant in *Frechette*, Gallagher is also a registered sex offender because of his 2011 conviction in state court for gross sexual imposition in a case that involved a two-year-old victim.[2] Thus, unlike the defendant's actions in *Lewis* where that user only communicated his desire and willingness to engage in sexual activity with minors, Gallagher's prior state conviction confirmed that he had actually done so just four years prior. 605 F.3d at 399. Like the affiants in *Frechette* and *Lewis*, in this case the attesting FBI agent detailed his experience with child-pornography cases and his belief that the computer user retained files on his computer based on the nature of child-pornography files and/or consumers. But the affidavit in this case offered even more support by explaining how the evolution of computers has made it easier to share and store multiple files and detailing common traits and characteristics of individuals who collect child pornography. To expect more of the affidavit would come precariously close to requiring a showing of certainty; a showing that "has no part in a probable cause analysis." *Frechette*, 583 F.3d at 380 (citing *Illinois v. Gates*, 462 U.S. 213, 246 (1983)).

---

[2] Though the Presentence Investigation Report stated the victim's age as 3 years old, the plea agreement to which Gallagher agreed placed the victim's age at 2 years old.

Gallagher's argument that the files he shared in April, coupled with his 2011 state-court conviction, do not provide a substantial basis to support a finding of probable cause is unavailing. For starters, as the district court aptly observed, Gallagher's characterization of the relevant facts outlined in the affidavit is incomplete. It is true that, in denying Gallagher's motion to suppress, the district court relied in part on the files that Gallagher transmitted in April. But Gallagher gives too little weight to the court's additional considerations which included but were not limited to the affiant's experience and belief that images would be found on Gallagher's computer based on what the affiant knew about the nature of child-pornography files and collectors of such files. And while the district court did not mention this in its order, we established above that the 2011 conviction, while not dispositive, lent additional support to the magistrate judge's determination. *See Wagers*, 452 F.3d at 541.

Gallagher also cites *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), a case with no precedential value in this circuit, to argue that the magistrate judge could not properly consider his prior state-court conviction because the April files were not sufficient to establish that he was a "collector" of child pornography. But *Raymonda* is not persuasive here because the facts underlying the affidavit in *Raymonda* are a far cry from those set forth in Gallagher's case. There, the affidavit alleged only that an IP address associated with the defendant's home "opened between one and three pages of a website housing thumbnail links to images of child pornography, but did not click on any thumbnails to view the full-sized files." *Id.* at 117. In agreeing with the district court's finding that the warrant was not supported by probable cause, the Second Circuit described the facts in the search-warrant affidavit as "at least equally consistent with an innocent user inadvertently stumbling upon a child pornography website, being horrified at what he saw, and promptly closing the window." *Id.* Here, Gallagher's actions of not only accessing but also

transmitting child-pornography files on two separate days can hardly be characterized as "inadvertent[] stumbling[.]" *Id.*

## 2. Staleness

Gallagher next argues that the three-month lapse between his transmission of the files and the warrant application rendered the warrant application stale. He makes the same argument regarding his four-year-old state-court conviction. This argument also fails.

Search-warrant affidavits must allege "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). Staleness—i.e., "[t]he expiration of probable cause[—]is determined by the circumstances of each case and depends on the inherent nature of the crime." *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (quoting *United States v. Hython*, 443 F.3d 480, 485 (6th Cir.2006) (internal quotation marks omitted). It is well-established that the "same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *Lewis*, 605 F.3d at 402 (citing *Paull*, 551 F.3d at 522). That is because we have noted in child-pornography cases that "[i]mages typically persist in some form on a computer hard drive even after the images have been deleted and . . . can often be recovered by forensic examiners." *Id.* (quoting *United States v. Terry*, 522 F.3d 645, 650 n. 2 (6th Cir.2008) (internal quotation marks omitted). Further, child pornography "is generally carried out in the secrecy of the home and over a long period." *Paull*, 551 F.3d at 522.

Consistent with this backdrop, we have upheld numerous search warrants supported by evidence with time lapses far greater than the three-month period in this case. *See Frechette*, 583 F.3d at 381 (16 months); *Paull*, 551 F.3d at 522 (13 months); *United States v. Hampton*, 504 F. App'x 402, 404 (6th Cir. 2012) (10 months); *Lewis*, 605 F.3d at 402 (7 months); *Terry*, 522 F.3d

at 650 n.2 (5 months). Considering the nature of child-pornography cases, the three-month delay between the officer's receipt of the images and the execution of the search-warrant in this case did not cause the evidence to become stale. Further, regarding the state-court conviction, we are satisfied that Gallagher's active registration as a sex offender at the time the magistrate judge issued the warrant dispels any staleness argument. *See Frechette*, 583 F.3d at 379 (considering defendant's registration as a sex offender in probable-cause determination without referencing any timeframe regarding the conviction and/or incident that gave rise to the registration).

### 3. Good faith

The United States argues that the good-faith exception applies regardless of the sufficiency of the warrant. This is correct. The good-faith exception "allows admission of evidence 'seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective.'" *Paull*, 551 F.3d at 523 (citing *United States v. Leon*, 468 U.S. 897, 905 (1984)). Gallagher does not contest this argument in his principal brief, nor does he attribute any misleading statements or other evidence of bad faith to the affidavit or the magistrate judge. Accordingly, we have no reason to doubt that the agents here relied on the search warrant in good faith. And we deem further analysis unnecessary. *See Frechette*, 583 F.3d at 381 ("There is no need to go into a lengthy analysis of whether the agents relied on the search warrant in good faith because the magistrate judge had a substantial basis for finding probable cause.").

### 4. Hearing

Furthermore, we find that the district court was not required to conduct a hearing on Gallagher's motion to suppress, a decision we review for an abuse of discretion. *United States v. Moore*, 999 F.3d 993, 999 (6th Cir. 2021). "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that

*contested issues of fact* going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) (quoting *United States v. Downs*, No. 96–3862, 1999 WL 130786, at *3 (6th Cir. Jan. 19, 1999)) (internal quotation marks omitted).

On appeal, Gallagher argues that he challenged the magistrate judge's finding that he was a "collector" of child pornography. According to Gallagher, he could only refute the facts in the affidavit that the magistrate judge relied on in reaching this conclusion through cross examination. However, he did not make this argument before the district court. Rather, as discussed above, Gallagher hinged his motion to suppress on arguments of insufficiency and staleness; arguments that are "entirely legal in nature." *See Abboud*, 438 F.3d at 577 (noting that sufficiency and staleness arguments are challenges to the magistrate's legal conclusions and accordingly do not require a hearing); *see also Moore*, 999 F.3d at 999 (finding that district court was not required to conduct hearing on motion to suppress where defendant's motion raised purely legal questions). But even had Gallagher made the argument he now raises on appeal—that cross examination was his sole avenue to raise questions of fact—we would reach the same conclusion. To be sure, we require a hearing "only if *the motion* . . . enable[s] the court to conclude that contested issues of fact. . . are in question." *Abboud*, 438 F.3d at 577 (emphasis added). We accordingly look to the motion itself to identify issues of fact warranting a hearing for further exploration; we do not rely on a defendant's hope that a hearing will reveal fact issues on cross examination. The court did not abuse its discretion in deciding Gallagher's motion without a hearing.

### B. Motion to Withdraw Guilty Plea

In addition to challenging the district court's denial of his suppression motion, Gallagher contends that the district court erred in denying his motion to withdraw his guilty plea. According to Gallagher, he only pleaded guilty because he had been the victim of sexual assault just before

his change-of-plea hearing, which caused him tremendous psychological distress.  We do not reach the merits of Gallagher's motion to withdraw his guilty plea, as we find that he has waived his right in that regard, and that his waiver is valid.

### 1.  Waiver

Criminal defendants may surrender "any right, even a constitutional right, . . . in a plea agreement if that waiver was made knowingly and voluntarily."  *United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006) (citing *United States v. Ashe*, 47 F.3d 770, 775–76 (6th Cir. 1995)).  Moreover, in the context of a motion to withdraw a guilty plea where "a defendant enters a guilty plea pursuant to a plea agreement, reference in the plea agreement to the 'conviction' can only mean the guilty plea from which the judgment of conviction resulted."  *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012).  Thus, when a defendant has waived his right to appeal a conviction, he has waived his right to appeal the district court's decision on his motion to withdraw his guilty plea, as such pleas are "inextricably part of the judgment of conviction entered against him."  *Id.*

Here, Gallagher waived his right to appeal the district court's denial of his motion to withdraw.  Notably, in paragraph 10 of the plea agreement, Gallagher preserved his right to withdraw his guilty plea only if he successfully appealed any of the district court's findings on the issues discussed above regarding his motion to suppress—i.e., staleness, substantial basis, or good faith.  Hence, Gallagher cannot rely on this paragraph as an avenue to appeal his motion because, as determined above, his appeal of the issues raised in his motion to suppress fails.

Moreover, paragraph 20 of the plea agreement states that, except for certain rights specifically listed later in the paragraph, Gallagher "expressly and voluntarily waives," among others, his right "to appeal the conviction or sentence in this case[.]"  The appellate rights that Gallagher preserved in paragraph 20 relate only to his sentencing determination, the court's

characterization of his criminal history category, and the court's denial of his motion to suppress; he did not preserve his right to challenge the district court's decision on a future motion to withdraw his guilty plea. Rather, he waived it when he surrendered his right to appeal his conviction. *See Toth*, 668 F.3d at 378.

## 2. Validity of Waiver

The waiver in the plea agreement deprives us of jurisdiction to review the district court's decision on Gallagher's motion to withdraw unless he can show that the waiver is invalid. *See United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005) (holding that the circuit court lacked jurisdiction to hear the defendant's appeal because the defendant waived his right to appeal in the plea agreement). On the facts before us, we find that he cannot.

This court can entertain challenges to the validity of an appellate waiver. *Toth*, 668 F.3d at 377 (citing *In re Acosta*, 480 F.3d 421, 422–23 (6th Cir. 2007)). Such challenges include claims of ineffective assistance of counsel, claims that the waiver was not knowing and voluntary, and claims that the waiver was not in compliance with Federal Rule of Criminal Procedure 11. *See id.* (citing *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009)). Gallagher does not address the issue of waiver in his opening brief. Thus, he does not argue that his waiver was not knowing and voluntary; nor does he reply to the United States' arguments to the contrary.

Still, even were we to construe Gallagher's argument that he only pleaded guilty because he was under tremendous psychological stress as an argument that the waiver contained in his plea agreement was not knowing and voluntary, this argument fails. In determining whether a waiver was knowing and voluntary, we look to the plea agreement and the district court's plea colloquy. *See, e.g., United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004); *see also United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001) (finding valid waiver where the record "clearly

demonstrate[d] that [the defendant] understood the waiver contained in the plea agreement and consented to it voluntarily"). For instance, in finding that the defendant in *Swanberg* knowingly waived his right to appeal his sentence, we explained that:

> The plea agreement . . . states that "[t]he defendant and the United States knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any issues that relate to the establishment of the guideline range. . . ." At the plea colloquy, [the defendant] answered "yes" when the district court asked if he "had an adequate opportunity to read and review this entire plea agreement with [his] attorney[.]" The prosecutor then read into the record various parts of the plea agreement. He also explained that the agreement "specifically states that there is no appeal-Mr. Tuimala waives the right to appeal the calculation of the guideline range and . . . he can only appeal a departure upward or downward from the guideline range or a sentence that exceeds the maximum set by law." Finally, the district court expressly found that "the plea is made knowingly and with full understanding of the rights that I've explained to the defendant."

*Swanberg*, 370 F.3d at 626.

The colloquy and plea agreement in this case lead to the same conclusion. Looking first to the plea agreement, Paragraph 20 indicates that Gallagher's counsel had advised him of his appellate rights regarding *conviction* and sentencing. *See Toth*, 668 F.3d at 378 ("[R]eference in the plea agreement to the 'conviction' can only mean the guilty plea from which the judgment of conviction resulted."). And, like the plea agreement in *Swanberg*, Gallagher's agreement goes on to state that "[he] expressly and voluntarily waive[d] those rights."

Furthermore, the district court asked Gallagher several questions during the change-of-plea hearing to confirm that he understood the terms of his agreement and entered it voluntarily; Gallagher answered in the affirmative each time. For instance, just as the lower court did in *Swanberg*, the district court here confirmed that Gallagher understood that his appellate rights were limited. 370 F.3d at 626. Indeed, the court asked Gallagher if he understood that "although [he] [has] the right to an appeal, it is limited by [his] plea agreement," and Gallagher responded, "Yes,

- 14 -

Your Honor." *See United States v. Jones*, 403 F.3d 817 (6th Cir. 2005) (quoting *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998) (holding "a straightforward and simple 'Yes, your Honor' is sufficient to bind a defendant" to the consequences of a guilty plea). At the outset of the hearing, the court encouraged Gallagher to ask questions if he did not understand the colloquy or if he needed to pause the hearing to discuss anything privately with his attorney. The court also offered to conduct the hearing in person rather than online via Zoom. Yet, Gallagher chose to proceed via Zoom, and made no mention during the hearing of the sexual assault on which he now hinges this appeal. Furthermore, the court asked Gallagher whether "any Government agent, the prosecutor, Mr. McElroy, [or] any third party [had] threatened [him] or anybody close to [him] with harm of any kind -- physical, financial, emotional, whatever . . . to cause [him] to plead guilty[.]" Gallagher responded, "No, Your Honor." To be sure there were no improper outside influences weighing on his decision, the district court also inquired of Gallagher's attorney whether Gallagher needed counseling on anything further regarding his waiver; his counsel responded in the negative. The district court also directly asked Gallagher whether he understood what the term "voluntary mean[t] in this context;" to which he responded, "Yes, I do, Your Honor." Only after all of this did Gallagher plead guilty and subsequently accept the parties' plea agreement. In view of the express language of his plea agreement and the thorough plea colloquy conducted by the district court, the record does not support a finding that Gallagher's waiver of his right to appeal was not knowing and voluntary, and, absent any argument from Gallagher in this regard, he has not shown otherwise.

## III.    CONCLUSION

For the reasons set forth above, we **AFFIRM**.