915 F.2d 1574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl YOUNG, Defendant-Appellant.
 No. 89-1395.
 United States Court of Appeals, Sixth Circuit.
 Oct. 1, 1990.
 
 Before RYAN AND ALAN E. NORRIS, Circuit Judges, WILHOIT, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant, Carl Young, appeals his conviction of conspiracy to possess with intent to distribute and to distribute a controlled substance in violation of 18 U.S.C. Sec. 841(a)(1) and Sec. 846. He contends the trial court erred in refusing to order the government to disclose the identity of an informant. He also challenges the sufficiency of the evidence supporting his conviction. Because neither of these claims is meritorious, the appellant's conviction is affirmed.
 
 I.
 
 2
 Young was charged in a fifteen count federal grand jury indictment as a "drop off/pick up" man in the Chambers brothers cocaine conspiracy, which operated in Detroit, Michigan from 1983 to 1988. The organization supplied and managed a network of houses in which cocaine was manufactured and processed into "crack" cocaine and then sold.
 
 
 3
 At 4:00 p.m. on September 17, 1986, a search warrant was executed at one of these houses, having been issued upon the affidavit of a Detroit police officer based on information from an individual who had been in the house earlier in the day and had identified three persons who were then and there present. While under surveillance that day, officers observed one Jerry Gant coming to and leaving the residence several times during the afternoon. The last time he carried a white plastic shopping bag which appeared to contain something which could have been cocaine. Appellant was not among those persons named by the informant, nor was he observed coming in and out of the house. There were several periods of time when the surveillance team was not present.
 
 
 4
 When the warrant was executed, Gant and Young were in the house. Young was heard running up the back stairs of the house. Pursued to the attic, appellant was found attempting to hide in some loose blown insulation. Nearby was a white plastic shopping bag containing approximately 450 grams of recently cooked cocaine base. The officers found several pots with cocaine residue in them in the kitchen.
 
 
 5
 Appellant was tried after the other co-defendants charged in the Chambers brothers conspiracy. In addition to the arresting officers, a witness named Terry Colbert testified against Young. Colbert indicated that he had worked for the Chambers organization prior to becoming a government informant. He testified that he had seen Young at two houses from which Colbert's uncle, Jerry Gant operated. He also stated that Gant held a high position in the Chambers organization. Colbert testified that Young was known as a "pick up and drop off" man.
 
 
 6
 Appellant testified that he was a truck driver who had lived in Detroit for only three months. Young claimed to have visited the house for the first time on the day of his arrest to see his old friend, Jerry Gant, from his home town in Arkansas. He explained that he ran to the attic out of panic when he saw guns and heard the commotion accompanying the execution of the search warrant. Appellant denied having any involvement with the organization or any knowledge of controlled substances in the house.
 
 
 7
 The jury returned a verdict of guilty on the conspiracy charge against Young. He was sentenced to an eight year term of imprisonment.
 
 II.
 
 8
 In his first assignment of error, appellant contends the trial court erred when it denied his motion for informant disclosure. He argues that the court should have at least conducted an in camera interview of the informant to determine the relevance and helpfulness of the informant's testimony to the defense. Young asserts that the testimony of the informant in his case would have been highly probative of Young's knowledge of the cocaine being located in the residence and his involvement with the cocaine and the alleged conspiracy. He further maintains that the informant was the only witness other than appellant and the arresting officers who could testify to these matters. We disagree.
 
 
 9
 Appellant argues that although the government has a privilege not to disclose the identity of persons who furnish information concerning violations of the law, Roviaro v. United States, 353 U.S. 53 (1957), that privilege is not absolute. "The scope of the privilege is limited by its underlying purpose," 353 U.S. at 60, which is to further and protect the public interest in law enforcement by encouraging citizens to communicate their knowledge of criminal activity to law enforcement officials. Id. at 59.
 
 
 10
 A further limitation on the applicability of the privilege arises from the fundamental requirement of fairness. Where the disclosure of an informant's identity or contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.
 
 
 11
 Id. at 60-61. The Court rejected a fixed rule with respect to disclosure, however.
 
 
 12
 ... The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.
 
 
 13
 Id. at 62.
 
 
 14
 In Roviaro, the United States Supreme Court held that the trial court committed prejudicial error by refusing to require disclosure of an informant. Roviaro was convicted of selling heroin to the informant while they were in the informant's automobile. Although the government agent who was secreted in the trunk testified at trial, the Court observed:
 
 
 15
 ... Petitioner's opportunity to cross-examine [police and narcotics officers] was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe [the informant] had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he "transported" ... to Doe's car.
 
 
 16
 Id. at 64.
 
 
 17
 The relevant facts in the case at bar are clearly distinguishable from those in Roviaro, and support the trial court's thorough analysis in finding that the informant was not a material witness. The informant was not present at the execution of the search warrant and thus, could not testify concerning appellant's activities immediately before and during the arrest. Unlike Roviaro, the informant would not be able to contradict the testimony of the arresting officers who witnessed appellant's flight and his attempt to conceal himself from them, not to mention the unhappy circumstances of the cocaine being found near his person. Finally, because the appellant's conspiracy conviction was based upon evidence other than the police officers' testimony concerning the events of September 17, 1986, see infra Sec. III, the informant was not the only material witness who could dispute the government's charges.
 
 
 18
 The cases from this circuit cited by appellant in support of his argument are similarly distinguishable on the facts. See United States v. Barnett, 407 F.2d 309 (6th Cir.), cert. denied, 395 U.S. 907 (1969) (informant was eyewitness observer and participant in sale of whiskey in violation of internal revenue laws); United States v. Lloyd, 400 F.2d 414 (6th Cir.1968) (informant set up and participated in illegal narcotics transaction). Regarding the need for an in camera interview of the informant, appellant's authority is also distinguishable. See United States v. Eddings, 478 F.2d 67, 71 (6th Cir.1973) (in camera hearing may be held to determine actual relevance when it is reasonably probable that informer can give relevant testimony).
 
 
 19
 On the basis of the particular circumstances in the case at bar, we hold that the trial court did not err in denying appellant's motion for informant disclosure.
 
 III.
 
 20
 Appellant asserts in his second and final issue on appeal that there was insufficient evidence presented at trial to prove that he was guilty of conspiracy to possess with intent to distribute cocaine. The relevant inquiry for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The prosecution proves conspiracy when it shows that a conspiracy was willfully formed and that the defendant agreed to participate in what he knew to be a joint venture to achieve a common goal. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd 483 U.S. 171 (1987). "However, actual agreement need not be proven." Id.
 
 
 21
 Appellant concedes a conspiracy existed, but he contends the evidence presented did not support the finding that he agreed to participate in it. Specifically he contends that the events of September 17, 1986, when he was arrested, and Colbert's testimony that he had seen Young at several crack houses operated by his friend, Jerry Gant, established only that appellant was present at those locations. Young argues that his mere presence at the crack houses was insufficient to establish participation in a conspiracy. United States v. Barrera, 547 F.2d 1250 (5th cir.1977). Furthermore, mere association with a conspirator does not make one a co-conspirator. United States v. Waddy, 536 F.2d 632 (5th Cir.1976). Knowing that drugs are present in a dwelling one occupies is insufficient to establish an individual's membership in a conspiracy. United States v. Hyson, 721 F.2d 856 (1st Cir.1983). Even if one knows of and acquiesces in the object of a conspiracy, this alone is insufficient to make one a conspirator. United States v. Williams, 503 F.2d 50 (6th Cir.1974). Finally, appellant contends that presence at the scene where controlled substances are found, in conjunction with fleeing or hiding from police officers, will not alone support a conspiracy conviction. United States v. Pintado, 715 F.2d 1501 (11th Cir.1983).
 
 
 22
 While this court does not reject the foregoing general propositions, we find that each of them was applied to factual circumstances distinguishable from the totality of the evidence before the jury in the case sub judice. In Barrera, the defendant's conviction of conspiracy to possess with intent to distribute heroin was reversed because, although the defendant had once visited a garage where heroin was found, there was no evidence that the defendant ever talked or communicated with any of the named co-conspirators. 547 F.2d at 1256. In Waddy, the defendant assisted others who engaged in the sale of marijuana at a hotel by carrying suitcases and personal effects between automobiles and hotel rooms. The Court found this activity insufficient to support his conspiracy conviction. 536 F.2d at 634. In Hyson, the defendant whose conspiracy conviction was reversed occupied an apartment rented by a co-defendant, who was found to have stored a quantity of hashish, packaged for sale, in a closet. There was no other evidence to support the defendant's involvement in the larger conspiracy in which his roommate took part.
 
 
 23
 In contrast, appellant Young was not only present at the residence, but was also found in close proximity to approximately $10,000 worth of cocaine base after fleeing from police and narcotics officers at the time of his arrest. There was also testimony that he was known to have had a role in the conspiracy and was seen at the house where he was arrested and at another organization house on other occasions. Based on these facts, United States v. Pintado is also distinguishable because, unlike the instant case, in Pintado there was no evidence other than the defendant's presence and hiding in a house where bales of marijuana were found in the garage, "from which an inference of conspiratorial participation could be drawn." 715 F.2d at 1505.
 
 
 24
 Appellant's reliance upon Williams is misplaced. In that case, co-defendant Roy Williams Sr. and Roy Williams Jr. reported one piece of luggage as being lost at the airport in Cleveland, Ohio, where they arrived from Omaha, Nebraska. The luggage, when found, was searched and discovered to contain heroin and cocaine. The bag was delivered to Williams Jr. by federal agents, who then followed him to a motel room. When the agents entered, Williams Sr. and another previously unidentified co-defendant were in the bathroom flushing the contents of two plastic bags down the toilet.
 
 
 25
 The court reversed all three defendants' convictions for conspiracy to possess with intent to distribute controlled substances because there was no evidence from which an agreement between the three could be inferred. 503 F.2d at 54. The only evidence against the third man was that he emptied bags into the toilet. The court found no evidence of an agreement between Williams Jr. and Williams Sr., nor was there any evidence that Williams Jr. committed an overt act, a requirement for his conviction. Finally, Williams Sr.'s conviction was reversed under the principle that where "all other alleged co-conspirators are acquitted, the conviction of one person for conspiracy will not be upheld." Id. Like the fact patterns in the foregoing cases, the facts in Williams are distinguishable from those in the case at bar because they are similar to only a fragment of the evidence adduced at Young's trial.
 
 
 26
 The standard set out in Jackson v. Virginia "gives full play to the responsibility to the trier of fact fairly to resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts, and consider all of the evidence in the light most favorable to the prosecution." Id., 443 U.S. at 319. This court has held that the government should be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, Freedman v. United States, 469 U.S. 1193 (1985) (references omitted). When the offense charged is inherently secretive in nature, it may be proved by circumstantial evidence. This is the norm in drug conspiracy cases, where there may be no direct evidence of the conspiratorial agreement. United States v. Green, 548 F.2d 1261, 1266 (6th Cir.1977).
 
 
 27
 "... A defendant's participation in a conspiracy may be inferred from acts of his which furthered the objectives of the conspiracy. Seemingly innocent acts, taken individually, may indicate complicity in a conspiracy when viewed collectively and with reference to circumstances in general."
 
 
 28
 United States v. Ashworth, 836 F.2d 260, 265 (6th Cir.1988) (quoting United States v. Mariani, 725 F.2d 862, 865-66 (2nd Cir.1984) (emphasis in original).
 
 
 29
 The jury had before it evidence of an elaborate cocaine distribution network, in which Jerry Gant was actively involved. In evidence was the fact that Gant and other members of the organization had been convicted of conspiracy for their participation in the Chambers organization. There was testimony that appellant was seen at several organization houses and was known as a "pick up/drop off" man. Police officers testified that when the search warrant was executed at an organization house from which Gant operated, Young ran to the attic and attempted to hide within inches of a plastic bag containing a quantity of crack cocaine. The bag was similar in appearance to one Gant was seen carrying into the house earlier in the afternoon. The crack cocaine seized was the same size and shape as pots found bearing cocaine residue in the kitchen. The jury also had before it Young's testimony explaining his presence as an innocent visitor who ran because he was frightened, as well as his denial of any involvement in the conspiracy. The jurors were entitled to believe or disbelieve any of the testimony and to weigh the evidence. From the totality of the evidence presented, and the inferences which could be reasonably drawn from it, a rational jury could have found that Carl Young agreed to participate in the cocaine conspiracy. We hold that the trial court did not err in denying appellant's motion for judgment of acquittal.
 
 IV.
 
 30
 For the above stated reasons, appellant's conviction is AFFIRMED.