**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0730n.06**
**Filed: October 10, 2007**

**Nos. 06-5810, 06-5811**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| STEVE LOFTON, JR. and | ) | EASTERN DISTRICT OF KENTUCKY |
| MICHAEL L. BLACK, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

Before: GUY, ROGERS, and McKEAGUE, Circuit Judges.

**ROGERS**, Circuit Judge.  Michael Black and Steve Lofton were charged with conspiracy to distribute and possess with intent to distribute marijuana, cocaine, and crack cocaine, 21 U.S.C. § 846; possession with intent to distribute marijuana, cocaine, and crack cocaine, 21 U.S.C. § 841(a)(1); and aiding and abetting, 18 U.S.C. § 2.  The defendants were tried separately, and both were convicted on all counts.  Black and Lofton appeal their convictions based on evidentiary and procedural rulings by the district court.  For the reasons stated below, we affirm their convictions.

**I. Background**

On June 22, 2005, Officer Timothy Fegan of the Buffalo Trace Gateway Narcotics Task Force received information about drug activity at an apartment located at 318-1/2 Plum Street in Maysville, Kentucky. Shortly after beginning surveillance of the area, he saw a Suburban pull up to the Dutch Inn, a bar located near the Plum Street apartment. Officer Fegan witnessed Lofton, Black, and two other men get out of the car. Black removed two duffel bags, one black and one orange, from the back passenger seat. Lofton and the other two men drove away after several minutes, leaving Black, who went into the Plum Street apartment. Thereafter, Officer Fegan saw Black make several trips between the apartment and the Dutch Inn. Officer Fegan also noticed a number of individuals entering and leaving the Dutch Inn without having stayed long enough to have a drink, and exiting without any packaged liquor. Suspecting that Black was selling drugs, Officer Fegan phoned a probation officer to confirm that Black was violating the terms of his probation by being at a bar. Shortly thereafter, Black was arrested for violating his probation, and a search conducted pursuant to the arrest revealed that he was carrying four large baggies of marijuana and $211 in cash.

Officer Fegan secured a search warrant for the Plum Street apartment after Black's arrest. The searching officers concluded that one of the two bedrooms in the apartment belonged to Lofton because it contained clothes for a "larger person" and a title to a motorcycle bearing Lofton's name. Several shoe boxes were stacked along a wall of the bedroom, and police discovered two baggies of crack cocaine in the same box containing the title to Lofton's motorcycle. In the other bedroom,

the officers found Black's ID and clothing, as well as marijuana inside a shoe in a shoebox and a smaller bag of marijuana in a box containing a wheel for a car.

In a hallway linen closet, police found the orange duffel bag that Officer Fegan had seen Black carrying, which contained six bags of marijuana. In the kitchen, police found a bag of marijuana in a utensil drawer and digital scales, plastic baggies, and baking soda on the kitchen counter. Officer Fegan testified that the baggies were of a kind typically used to package drugs for sale and that baking soda is used to make crack cocaine. Police also found, on the kitchen counter, a WD-40 can with a false bottom containing cocaine and crack cocaine. Underneath the sink, police discovered an Ajax container that contained crack cocaine.

Officer Fegan took custody of all the evidence recovered from the search, and Jodi Bailey, a chemist employed by the Kentucky State Police Regional Crime Laboratory, weighed the drugs. The total weight of all crack cocaine found in the apartment was 54.1 grams, which included 6.333 grams found in Lofton's bedroom. Lofton anticipated that Black would testify on Lofton's behalf if their cases were tried separately, based on a letter written by Black indicating that Lofton had nothing to do with the narcotics found at the Plum Street apartment. Consequently, the district court granted Lofton's motion for a separate trial. Black was tried first.

At Black's trial, Officer Brett Price of the Covington, Kentucky Police Department, and a member of a DEA task force in Cincinnati, testified as an expert in narcotics trafficking that, in his opinion, the amounts of cocaine, crack cocaine, and marijuana found in the apartment were

distribution quantities. Additionally, the landlord of the Plum Street apartment testified that Lofton and Black rented the apartment beginning in November of 2002, and that Lofton paid the rent in cash from February 2005 until June 2005. Two witnesses testified that the utilities were in Lofton's name. Officer Fegan testified that he was familiar with both Lofton and Black, having seen both of them in the area near the apartment previously, and that he had seen Lofton come and go from the apartment over the last few years. Officer Fegan also testified that he had seen Lofton at the apartment about a week before June 22, 2005. Over Black's objection, the Government presented the testimony of Officer Timothy Mitchell of the Maysville Police Department regarding a 2003 incident involving Black, during which Mitchell had arrested Black after finding a cigar box near where Black had been standing that contained five baggies of cocaine and a bag of marijuana.

At Lofton's trial, Officer Fegan again testified to the general facts outlined above regarding the living situation at the Plum Street apartment. Additionally, he testified that he had known Lofton since the year 2000, and that he had seen Lofton dozens of times, including at the Plum Street apartment and loitering in a "high drug traffic area" on East Fourth Street and in other Maysville areas where the police had heard complaints about drugs. Officer Fegan also identified Lofton in surveillance photographs from the June 22, 2005, incident as the driver of the Suburban that had dropped Black off near the Plum Street apartment. During cross-examination, defense counsel called Officer Fegan's identification of Lofton into question, pointing out that Officer Fegan had previously identified a different man in photographs as being Lofton. Also during cross-examination, defense counsel introduced a photograph into evidence and asked Officer Fegan if he saw "Mr. Lofton in that

photograph, to the left with his couple fingers up[,]" to which Officer Fegan replied, "Yes. He's giving the Fourth Street sign." J.A. at 350. On redirect, the Government asked Officer Fegan what he meant by his reference to the "Fourth Street sign," and the district court allowed Officer Fegan to testify, over defense counsel's objection, that Fourth Street is "the street that Plum [Street] intersects with where all of our drug trafficking goes" and that he had seen the hand signal used by other drug traffickers in the area.

To erode Officer Fegan's credibility, Lofton's defense counsel elicited testimony during its case-in-chief from Ashley Cunningham, Lofton's girlfriend, that the person depicted in Officer Fegan's June 22 surveillance photographs was a man named Josh Graham, and not Lofton. In response, the Government re-called Officer Fegan to establish that he was familiar enough with Lofton to identify him. Officer Fegan described several encounters with Lofton, including a 25-minute interview of Lofton in 2000. The district court allowed the Government to display for the jury an audio tape of the interview that Officer Fegan had conducted with Lofton. The tape was not played for the jury, and the subject of the interview was never revealed. The district court instructed the jury not to speculate about the tape or the subject matter of the taped conversation.

Both Black and Lofton were ultimately convicted by separate juries on all counts. Black and Lofton now appeal their convictions.

## II. Analysis

### A. Black's Trial

Black raises three challenges on appeal. First, he argues that the evidence presented at trial was not sufficient to sustain his convictions for conspiracy and for possession with intent to distribute more than 50 grams of cocaine base. Next, he argues that the district court erred by allowing the Government to introduce evidence regarding a prior incident under Federal Rule of Evidence 404(b). Finally, he argues that the district court erred in using his past conviction to enhance his sentence. For the reasons stated below, each argument fails.

## 1. Sufficiency of the evidence

The district court correctly found the Government's evidence sufficient to support jury convictions for conspiracy and possession with intent to distribute at least 50 grams of cocaine base. This court reviews de novo the district court's denial of a motion for a judgment of acquittal. *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002). "The standard for evaluating claims that a conviction is not supported by sufficient evidence presents a very difficult hurdle for the criminal appellant . . . ." *United States v. Maxwell*, 160 F.3d 1071, 1077 (6th Cir. 1998). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Following the close of the Government's case, Black moved for a judgment of acquittal on counts one and three of his indictment (alleging violations of 21 U.S.C. §§ 841(a) and 846) on the theory that the Government had neither established that he possessed cocaine base nor produced

sufficient evidence that he was part of a conspiracy. Regarding Black's possession of "cocaine base," the district court concluded that crack cocaine was "cocaine base" and that cocaine base had been referred to as "crack cocaine" for "as many years as I can recall." JA at 220. The district court also concluded that the Government had produced evidence sufficient to sustain a conviction for conspiracy, noting that Black and Lofton lived together and that drugs and drug paraphernalia were in the common areas of the apartment. JA at 221.

To obtain a conspiracy conviction, the Government must prove: (1) an agreement to distribute, or an agreement to possess with intent to distribute, drugs; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Lopez-Medina*, 461 F.3d 724, 750 (6th Cir. 2006). "In order to show a conspiratorial agreement, only a tacit understanding among the participants is required," *United States v. Hamilton*, 263 F.3d 645, 652 (6th Cir. 2001), and "a defendant's knowledge of and participation in a conspiracy may be inferred from his conduct and established by circumstantial evidence." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). This court has been careful to note, however, that, absent additional facts, a conspiracy cannot be inferred from "mere association" with a drug dealer or other conspirator:

> [M]ere presence at the crack houses was insufficient to establish participation in a conspiracy. Furthermore, mere association with a conspirator does not make one a co-conspirator. Knowing that drugs are present in a dwelling one occupies is insufficient to establish an individual's membership in a conspiracy. Even if one knows of and acquiesces in the object of a conspiracy, this alone is insufficient to make one a conspirator.

*United States v. Young*, 1990 WL 142348, at *3-4 (6th Cir. 1990) (unpublished) (citing *United States v. Barrera*, 547 F.2d 1250 (5th Cir. 1977); *United States v. Waddy*, 536 F.2d 632 (5th Cir. 1976); *United States v. Hyson*, 721 F.2d 856 (1st Cir. 1983); *United States v. Williams*, 503 F.2d 50 (6th Cir. 1974)); *see also United States v. Gibbs*, 182 F.3d 408, 422 (6th Cir. 1999); *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990).

While the evidence introduced by the Government supporting the existence of a conspiracy was not overwhelming, it was sufficient to sustain a jury verdict against Black. Evidence was introduced that: Lofton drove Black and two others to the Dutch Inn; Black removed two bags from Lofton's car; Black and Lofton spoke while Black continued to hold the bags; Black walked back and forth between the Plum Street apartment and the Dutch Inn multiple times, leading Officer Fegan to suspect drug trafficking; Black had four bags of marijuana on him when he was arrested at the Dutch Inn; officers found one of the two bags from Lofton's car in the Plum Street apartment with marijuana in it; the bag found in the apartment had such a strong odor that any person in the general vicinity would notice it contained drugs; Black and Lofton lived together and exercised control over the Plum Street apartment; drugs and supplies for distribution and manufacturing were found in the common, unsecured areas of the Plum Street apartment, including openly visible areas such as the kitchen counter; distribution quantities of drugs were found in both bedrooms, in unsecured locations; Black and Lofton had been seen together many times on Fourth Street, a high drug-trafficking area; and the Plum Street apartment had security and surveillance cameras on the front and back doors with a monitoring system that was located in Lofton's bedroom. Viewing this

evidence in a light most favorable to the prosecution, a rational trier of fact could have inferred a conspiratorial agreement between Black and Lofton beyond a reasonable doubt. Thus, Black's challenge to the sufficiency of the Government's evidence of conspiracy fails.

Because the evidence was sufficient to support Black's conviction for conspiracy, his conviction for possession with intent to distribute at least 50 grams of cocaine base also stands. First, a rational juror could conclude from the same evidence sustaining Black's conspiracy charge, combined with the existence of the conspiracy, that he constructively possessed the 6.333 grams of crack cocaine found in Lofton's bedroom, thus putting his total drug quantity above the 50-gram mark alleged in his indictment. *See, e.g.*, *United States v. Welch*, 97 F.3d 142, 150 (6th Cir. 1996); *United States v. Cobbs*, Nos. 06-1136, 06-1137, 2007 WL 1544207, at **8 (6th Cir. May 25, 2007) (unpublished). Second, Black's argument that the Government failed to establish that he possessed "cocaine base" fails. This court has previously held that the phrase "cocaine base" includes crack cocaine. *United States v. Levy*, 904 F.2d 1026, 1033 (6th Cir. 1990). While Black argues that "synthetic crack cocaine" – as it was called by the Kentucky State Police chemist – is not "cocaine base," he has failed to articulate a persuasive reason for distinguishing "synthetic crack cocaine" from either "crack cocaine" or "cocaine base." Thus, Black has failed to demonstrate that the Government's evidence was insufficient to sustain his possession conviction.

**2. Evidence regarding the 2003 incident**

It was also proper for the district court to allow Officer Fegan's testimony about a prior incident under Federal Rule of Evidence 404(b). In 2003, Officer Fegan arrested Black after finding a cigar box, near where Black had been standing, that contained five baggies of cocaine and a bag of marijuana. Black eventually pled guilty to a charge of cocaine possession arising from the incident. Federal Rule of Evidence 404(b) provides that evidence of a defendant's "other crimes, wrongs, or acts" may be admitted to establish, *inter alia*, intent or knowledge. Fed. R. Evid. 404(b); *see also United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir. 1985) (stating that Rule 404(b) "is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified"). To be admissible as other-acts evidence under Rules 404(b) and 403, the evidence must be probative of a material issue other than character, and the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *See United States v. Copeland*, 321 F.3d 582, 596 (6th Cir. 2003).

Evidence of the 2003 incident was probative of Black's intent and knowledge in the instant case. This court "review[s] de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose." *United States v. Comer*, 93 F.3d 1271, 1277 (6th Cir. 1991). Although Black argues that the Government should not have been allowed to introduce evidence of the 2003 incident because knowledge and intent were not at issue, this court has held that "[w]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise." *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994).

Additionally, the 2003 incident was both sufficiently similar and reasonably near in time to the specific-intent offense at issue in the instant case. To be admissible under Rule 404(b), evidence of defendant's prior bad acts must be substantially similar and reasonably near in time to the charged offense. *United States v. Wynn*, 987 F.2d 354, 357 (6th Cir. 1993). At the time of the 2003 incident, Black only possessed 3 grams of cocaine. Importantly, those 3 grams were separated and packaged into several individual baggies, indicating that he intended to distribute them. Although that amount is consistent with personal use and is significantly less than the amount he is charged with possessing and intending to distribute in the instant offense, the facts surrounding the 2003 incident are sufficiently similar to the charges underlying the instant case. We held in *United States v. Jones*, Nos. 91-6005, 91-6032, 1993 WL 11832, at \*3 (6th Cir. Jan. 20, 1993) (unpublished), that the defendant's separation of 4.1 grams of crack cocaine into a number of smaller, precisely weighed allotments allowed the jury to infer the defendant's intent to distribute. And our opinion in *United States v. Haywood*, 280 F.3d 715, 722 (6th Cir. 2002), suggests that where the Government seeks to introduce evidence of past possession of a small quantity of drugs in a case involving charges of possession with intent to distribute, the substantial-similarity test turns on whether the defendant intended to distribute the small quantity of drugs in the earlier incident.

Nor does the 29-month gap between the prior incident and the events underlying the present offense render the 404(b) evidence inadmissible. This court has held that there is "no absolute maximum number of years that may separate a prior act and the offense charged[,]" *United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985), and has allowed 404(b) evidence dating back many

more than 29 months. *See, e.g.*, *United States v. Murphy*, No. 90-6400, 1993 WL 15102, at *3-4 (6th Cir. Jan. 26, 1993) (unpublished) (3-4 years); *Ismail*, 756 F.3d at 1260 (up to 4 years).

Finally, the probative value of the 2003 incident was not outweighed by a danger of unfair prejudice under Rule 403. This court "review[s] for abuse of discretion the district court's determination that the 'other acts' evidence is more probative than prejudicial under Rule 403." *Comer*, 93 F.3d at 1277. Although Black correctly argues that the availability of other evidence is a factor in Rule 403's balancing analysis, the testimony of Agent Price regarding quantities indicative of distribution was the only other evidence of intent in the present case. "The district court has broad discretion in balancing probative value against potential prejudicial impact." *Ismail*, 756 F.2d at 1259. Black has not established that the district court abused its discretion in determining that the probative value of the 2003 incident was not outweighed by the danger of unfair prejudice. Moreover, the district court properly instructed the jury regarding the use of such evidence, mitigating any potential prejudice. *See United States v. Myers*, 123 F.3d 350, 363-64 (6th Cir. 1997). Consequently, Black's 403 argument also fails.

### 3. Black's sentence

It was proper for the district court to use Black's prior drug felony conviction to enhance his sentence. Before trial, the Government filed notice that it would use Black's prior conviction for cocaine possession to seek an enhanced sentence under 21 U.S.C. § 841. JA at 40. Following his conviction, the district court sentenced Black to 20 years in prison on counts one and three of his

indictment, the statutory mandatory minimum required due to his prior drug felony conviction.

Black argues that it was improper under the Sixth Amendment for the court to enhance his sentence

without first proving to a jury the fact of his prior conviction. As Black concedes, however, his

argument is foreclosed by this court's precedent. *See United States v. Hill*, 440 F.3d 292, 299 (6th

Cir. 2006) (citing *United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005)); *United States v.*

*Watford*, 468 F.3d 891, 915 (6th Cir. 2006). Consequently, this challenge fails.

**B. Lofton's Trial**

Lofton also raises three challenges on appeal. He first argues that the district court

improperly excluded an exculpatory letter written by Black. Next, he argues that the district court

erred in allowing Officer Fegan to display an audio cassette tape of a prior interview with Lofton

during Officer Fegan's rebuttal testimony. Finally, Lofton argues that the district court erred in

permitting Officer Fegan to testify regarding the meaning of a hand symbol Lofton displayed in a

photograph introduced by defense during Officer Fegan's cross-examination. For the following

reasons, each argument fails.

**1. Exclusion of Black's letter**

The district court did not err in refusing to admit into evidence the contents of a letter written

by Black in which Black takes responsibility for all drugs in the Plum Street apartment. This court

reviews district court evidentiary rulings regarding the admissibility of hearsay statements for abuse

of discretion. *United States v. Price*, 134 F.3d 340, 345 (6th Cir. 1998).

Before trial, Black wrote a letter in which he claimed that Lofton no longer lived in the Plum Street apartment, owned nothing inside it, and knew nothing about Black's activities therein. The Government made an oral motion during trial to preclude introduction of the contents of the letter through the defense's first witness. In response, Lofton relied on the hearsay exception articulated in Federal Rule of Evidence 804(b)(3), arguing that the contents of the letter constituted a statement against Black's penal interest. The district court, believing that Black would be available to testify, declined to conduct a premature Rule 804(b)(3) analysis to determine the admissibility of the letter. Although the district court indicated that the letter may become admissible under Rule 804(b)(3) if Black were later to become unavailable, Lofton's counsel did not call Black as a witness and never again raised the issue of the letter's admissibility.

Lofton argues on appeal that the district court erred by excluding the letter from evidence, and that this alleged error denied him of his right to a fair trial under the Sixth Amendment. His argument fails. At the time of the district court's initial and tentative ruling that the contents of the letter were inadmissible, Lofton had not demonstrated that the requirements of Rule 804(b)(3) had been met. *See Old Chief v. United States*, 519 U.S. 172, 183 n.6 (1997) ("It is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule and not indulge in review by hindsight."). Three conditions must be met before a district court may admit a statement against penal interest under Rule 804(b)(3): "(1) the declarant must be unavailable to testify; (2) the statement must subject the declarant to criminal liability in a real and tangible way; and (3) corroborating circumstances must clearly indicate the trustworthiness of the statement."

*Price*, 134 F.3d at 347. Although Lofton argues in hindsight that these circumstances were met and that Black was unavailable to testify, he did not attempt to demonstrate Black's unavailability either before or at the time of the district court's initial ruling. Because he had failed to satisfy his burden of establishing unavailability, *see United States v. Pelton*, 578 F.2d 701, 709-10 (6th Cir. 1978), he cannot now complain about the district court's preliminary and tentative adverse ruling.

What is more, nothing in the district court's preliminary ruling prevented Lofton from calling Black to testify, from introducing the letter on a showing of Black's unavailability, from demonstrating the letter's trustworthiness, or from revisiting the letter's admissibility in any other way, all of which Lofton failed to do. Lofton's unexplained failure to call Black or establish the prerequisites of the letter's admissibility did not result from any error on the part of the district court. Thus, the district court's preliminary ruling was not an abuse of discretion, and it did not interfere with Lofton's right to present a defense under the Sixth Amendment.

### 2. The audio tape

The district court's decision allowing Officer Fegan to display an audio cassette tape of a prior interview with Lofton during Officer Fegan's rebuttal testimony did not result in unfair prejudice under Federal Rule of Evidence 403. A reviewing court will not reverse a trial court's decision to admit or exclude evidence on the basis of relevancy or unfair prejudice absent a showing of "a clear abuse of discretion." *Zamlen v. City of Cleveland*, 906 F.2d 209, 215 (6th Cir. 1990). The reviewing court "must look at the evidence in 'the light most favorable to its proponent,

maximizing its probative value and minimizing its prejudicial effect.'" *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993) (quoting *United States v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984)). "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest a decision on an improper basis." *Paschal v. Flagstar Bank*, 295 F.3d 565, 579 (6th Cir. 2002).

Lofton argues that the district court erred in permitting Officer Fegan to testify regarding his 2000 interview of Lofton and to display an audio cassette recording of the interview. He argues that he offered to stipulate that Officer Fegan knew Lofton well enough to identify him, rendering minimal the probative value of the testimony and the display of the tape, and that any probative value was outweighed by the prejudicial effect of displaying the tape because the existence of a taped interview suggests Lofton's involvement in criminal activity.

The first flaw in this argument is that Lofton directly attacked Officer Fegan's ability to recognize him during cross-examination. Such an attack is inconsistent with and not erased by Lofton's offer to stipulate to Officer Fegan's familiarity with him, and the Government was entitled to present rebuttal evidence. *See United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994); *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).

Moreover, although the tape may tend to indicate, as Lofton argues, that Lofton was involved in prior criminal activity, the tape could also have been made because Lofton was a witness or informant. The district court's instruction to the jury not to speculate about the tape's contents

further bolsters the conclusion that the display of the tape was not unfairly prejudicial. On balance, the Government was entitled to rebut Lofton's assertions that Officer Fegan could not reliably identify him, and it cannot be said that any prejudicial effect of testimony regarding the prior interview substantially outweighed the probative value of the evidence.

Even assuming for the sake of argument that the display of the audio tape was unfairly prejudicial, any error was harmless. "Unlike the Rule 403 analysis that considers the unfairly prejudicial effect of the particular piece of evidence at issue, harmless error analysis requires this court to consider whether the particular evidence prejudiced the outcome of the trial and resultant convictions." *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999); *see also Zamlen*, 906 F.2d at 216 ("[E]ven if the lower court's decision amounts to an abuse of discretion, it will not be disturbed on appeal if it did not result in a substantial injustice . . . ."). We cannot say that the mere display of an audio tape of an interview during permissible rebuttal testimony prejudiced the outcome of Lofton's trial.

### 3. Testimony regarding the "Fourth Street sign"

The district court did not err in permitting Officer Fegan to testify during his cross-examination and re-direct regarding the meaning of a hand symbol Lofton displayed in a photograph. Lofton argues that this testimony was both unfairly prejudicial under Federal Rule of Evidence 403 and inadmissible under Rule 404(b) as "simply testimony that Lofton is a bad person who makes hand signals made similar to those made by other bad people." Lofton Br. at 27.

Lofton's Rule 404(b) argument is misplaced. The purpose of Officer Fegan's testimony was not, as Lofton argues, to present Lofton as a person of poor character. Indeed, the photograph at issue was not even introduced by the Government, but rather was introduced and inquired into by defense counsel on cross-examination after counsel's attempts to erode the reliability of Officer Fegan's identification of Lofton in the June 22 surveillance photographs. Nor was Officer Fegan's narrow and limited elaboration during re-direct on the meaning of Lofton's "Fourth Street" signal offered for the purpose of illustrating Lofton's character. Defense counsel's strategy throughout the cross-examination was to suggest that Officer Fegan was mistaken about Lofton's identity and otherwise careless about his investigation. Defense counsel's more global trial strategy was to distance Lofton from connections with the drug trafficking area by Plum Street and the Dutch Inn. The purpose and probative value of Officer Fegan's testimony on re-direct regarding the meaning of the Fourth Street sign and its association with local drug trafficking was to establish that he was indeed knowledgeable about both Lofton and the drug trafficking that occurred in the area – issues defense counsel raised by their chosen cross-examination strategy. The fact that Officer Fegan's testimony connected Lofton to the Fourth Street area and other drug traffickers cannot be considered unfair prejudice, particularly given that other testimony already established his extensive connections to the area and to Black. Accordingly, Lofton's arguments under Rules 404(b) and 403 fail.

### III. Conclusion

For the foregoing reasons, we affirm Lofton's convictions and Black's convictions and sentence.